[No. 18390.          In Bank.—December 18, 1896.]

## H. HUGHSON ET AL., APPELLANTS, v. JOHN M. CRANE, COLLECTOR, ETC., RESPONDENT.

IRRIGATION DISTRICT—POWER OF BOARD TO DISPOSE OF BONDS—PURCHASE OF PROPERTY—SALE IN MARKET—DEBTS NOT PAYABLE IN BONDS—CONSTRUCTION FUND.—The only mode in which the board of directors of an irrigation district can exercise their power of disposing of the bonds of the district, under the provisions of the irrigation act, so that they may become valid obligations against the district, is either to exchange them for property purchased for construction purposes, at their par value, under section 12 of the act, or to sell them for money in the open market, under the provisions of section 16 of the act, at not less than ninety per cent of their face value; and they have no power or right to exchange the bonds for any other purpose, or to make payment with them at ninety per cent of their face value, in discharge of any obligation of the district, or to dispose of the bonds, or of the moneys received from sales of the bonds, for any other object than to provide for the construction fund contemplated by the act.

ID.—OBJECT OF IRRIGATION ACT—MONEY BASIS.—The irrigation act is framed upon the theory and with the intention on the part of the legislature that the affairs of the district shall be conducted upon a money basis, and not on credit.

ID.—HISTORY OF IRRIGATION DISTRICT BONDS—JUDICIAL NOTICE.—The court can take judicial knowledge of the financial history of irrigation district bonds.

ID.—POWER OF ASSESSMENT FOR INTEREST—DISCRETION.—The power of the board, in levying an assessment to pay interest on the bonds, is not limited to the exact amount of the annual interest; but they have a discretion in determining how great an assessment will be sufficient to raise the annual interest, and, unless it can be seen that they have abused this discretion, courts ought not to interfere with their action.

ID.—EXCESSIVE ASSESSMENT—INJUNCTION.—If the disparity between the amount of the assessment and the annual interest is so great as to make it appear that the action of the board was improper, and not in the exercise of any discretion, so that the assessment is excessive, courts are authorized to prevent its enforcement by injunction.

ID.—COMPLAINT TO ENJOIN ASSESSMENT—ILLEGAL BONDS—FAILURE OF OFFICERS TO KEEP RECORD—AMOUNT OF LEGAL BONDS UNKNOWN—PAYMENT OF PART OF ASSESSMENT NOT REQUIRED.—Where the complaint, in an action to enjoin an excessive assessment for the annual interest on irrigation bonds, sufficiently shows that at least the sum of $40,000 of the assessment was for illegal bonds and unauthorized, and alleges in general terms that the outstanding bonds were illegally issued, but fails to account specifically for all of the outstanding bonds, and shows an inability of plaintiff to determine and allege definitely what amount of bonds, if any, were legally disposed of, owing to the failure of the officers to keep such a record of their disposal as is required by the act, the plaintiff, in such case, is exonerated from making a definite allegation of such amount, and the rule of equity requiring the payment of that part of the assessment which is admitted to be just, as a condition of invoking the aid of equity, becomes inapplicable.

ID.—ILLEGAL BONDS ISSUED IN PAYMENT FOR CONSTRUCTION—BENEFIT TO DISTRICT NOT CONSIDERED.—Bonds issued to a contractor in payment for the construction of a dam needed by the irrigation district, and taken by him at ninety per cent of their face value, are illegally issued, and cannot be valid obligations in his hands, nor can the benefits received and enjoyed by the district be considered in an action to enjoin an assessment for interest upon such bonds, any equitable right of recovery for such benefits being independent of any liability of the district upon the bonds.

ID.—NOTICE OF LIMITATION OF POWER.—Any person dealing with a municipal or public corporation is charged with a knowledge of all the limitations upon the power of its officers, and can have no right of action upon its written obligation entered into in disregard of statutory requirements.

ID.—INJUNCTION AGAINST DISTRICT COLLECTOR—PARTIES TO ACTION.—In an action to enjoin the collection, by the collector of an irrigation district, of an excessive assessment for interest on bonds of the district, neither the irrigation district, nor its agent for the sale of bonds, nor the holder of illegal bonds, is a necessary party.

APPEAL from a judgment of the Superior Court of Stanislaus County and from an order dissolving an injunction. W. O. MINOR, Judge.

The facts are stated in the opinion of the court.

*Eastin & Griffin,* for Appellants.

The Turlock irrigation district and the bondholders are not necessary parties defendant. (*Sayward* v. *Hough-*

*ton*, 82 Cal. 628; Code Civ. Proc., secs. 339, 382; *Von Schmidt* v. *Huntington*, 1 Cal. 66; Pomeroy's Equity Jurisprudence, secs. 181, 243, 245, 250, 251, 260, 265–75; *Gorman* v. *Russell*, 14 Cal. 532; Hawes on Parties to Actions, secs. 19, 103; *Board of Supervisors* v. *Walbridge*, 38 Wis. 188; *Donalds* v. *Plumb*, 8 Conn. 457; *Ryan* v. *Lynch*, 68 Ill. 160; *Marshall* v. *Silliman*, 61 Ill. 218; Story's Equity Pleading, secs. 76, 77, 135; *Prentice* v. *Kimball*, 19 Ill. 319; *Smith* v. *Rotan*, 44 Ill. 506; *Leitch* v. *Wentworth*, 71 Ill. 146; *Wilson* v. *Castro*, 31 Cal. 421.) If the answer discloses that others should be made defendants, and plaintiff fails to ask that they be brought in, the court should order it done, that the whole controversy may be settled in one action. (Hawes on Parties to Actions, sec. 104; *Robinson* v. *Gleason*, 53 Cal. 38; *Gates* v. *Lane*, 44 Cal. 392; *Harrison* v. *McCormick*, 69 Cal. 619; *Lytle Creek Water Co.* v. *Perdew*, 65 Cal. 447.) No person can be held liable for a tax of any kind except on the production of an assessment against him made in the manner provided by the taxing power. (*Moss* v. *Shear*, 25 Cal. 38; 85 Am. Dec. 94; *People* v. *Sneath*, 28 Cal. 612; *Taylor* v. *Donner*, 31 Cal. 481; *Smith* v. *Davis*, 30 Cal. 537; *Haskell* v. *Bartlett*, 34 Cal. 281; *People* v. *Mahoney*, 55 Cal. 286; *Weyse* v. *Crawford*, 85 Cal. 196; *Kelsey* v. *Abbott*, 13 Cal. 609; *Himmelman* v. *Danos*, 35 Cal. 441; *Emeric* v. *Alvarado*, 90 Cal. 446.) The mode prescribed is the measure of the power of the board of directors of an irrigation district to create a liability upon the district. (*Head* v. *Providence Ins. Co.*, 2 Cranch, 150; *Farmers' Loan etc. Co.* v. *Carroll*, 5 Barb. 649; 15 Am. & Eng. Ency. of Law, 1042, 1045, 1086, and cases cited; 1 Dillon on Municipal Corporations, secs. 457, 463, 531; *Salt Creek Tp.* v. *King Iron Bridge etc. Co.*, 51 Kan. 520; *Daly* v. *San Francisco*, 72 Cal. 154; *Gottman* v. *San Francisco*, 20 Cal. 96; 81 Am. Dec. 96; *Murphy* v. *Napa County*, 20 Cal. 497; *Anthony* v. *Jasper County*, 101 U. S. 693; *People* v. *Ballerino*, 99 Cal. 598.) No bond of the district, sold other than in the manner prescribed by

section 16 of the Wright irrigation act, is a legal charge upon the property of the district, and every bondholder is charged with notice of these provisions. (See case, *supra; Marshall County* v. *Cook,* 38 Ill. 47; 87 Am. Dec. 282; *Sutro* v. *Pettit,* 74 Cal. 332; 5 Am. St. Rep. 442; *Sutro* v. *Rhodes,* 92 Cal. 117; 1 Dillon on Municipal Corporations, 4th ed., secs. 447 (372), 449 (373); *Law* v. *People,* 87 Ill. 385; *Buchanan* v. *Litchfield,* 102 U. S. 278 (138); *Ogden* v. *County of Daviess,* 102 U. S. 634; (263); *Ottawa* v. *Carey,* 108 U. S. 110; *Merchants' Bank* v. *Bergen County,* 115 U. S. 384; *Hopper* v. *Covington,* 118 U. S. 148; *Norton* v. *Shelby Co.,* 118 U. S. 425; *Modesto Irr. Dist.* v. *Tregea,* 88 Cal. 334.) If plaintiffs cannot in any way determine what amounts they should tender they cannot be required to tender anything, as a condition precedent to their right to enjoin. (*Hays* v. *Hogan,* 5 Cal. 241; *Falkner* v. *Hunt,* 16 Cal. 167; *Hardenburgh* v. *Kidd,* 10 Cal. 403; *Bucknall* v. *Story,* 36 Cal. 72, 73; *Wills* v. *Austin,* 53 Cal. 152; *People* v. *Cone,* 48 Cal. 427; *People* v. *Hyde,* 48 Cal. 431; *Axtell* v. *Gerlach,* 67 Cal. 483; *Crane* v. *Janesville,* 20 Wis. 305; *Wilcoxon* v. *San Luis Obispo,* 101 Cal. 508; *Brown* v. *Jenks,* 98 Cal. 10; *Oregon etc. R. R. Co.* v. *Portland,* 25 Or. 229.)

*P. J. Hazen,* for Respondent, and *R. Percy Wright, amicus curiæ.*

The Turlock irrigation district and the holders of the bonds alleged to be invalid, are necessary parties. (*People* v. *Gunn,* 85 Cal. 243; High on Injunctions, secs. 557, 576, 577, 1297, and cases cited; *Hurlburt* v. *Banks,* 1 Abb. N. C. 157; *Anthony* v. *State,* 49 Kan. 246; *Carpenter* v. *Hindman,* 32 Kan. 601; *State* v. *Anderson,* 5 Kan. 90; *State* v. *Sanderson,* 54 Mo. 203; *Shields* v. *Pipes,* 31 La. Ann. 765; *Sanders* v. *Yonkers,* 63 N. Y. 489; *Gilmore* v. *Fox,* 10 Kan. 509; *California* v. *Southern Pac. Co.,* 157 U. S. 229; Story's Equity Pleading, 9th ed., secs. 78, 92.) The remedy sought is purely equitable, and plaintiffs fail to state a case of equity. (High on Injunctions, c. 8, secs. 485, 486; Cooley on

Taxation, 484, 485, 490, 536, 544; *Brooklyn* v. *Meserole*, 26 Wend. 132; *Mooers* v. *Smedley*, 6 Johns. Ch. 28; Civ. Code, sec. 3423; *Central Pac. R. R. Co.* v. *Corcoran*, 48 Cal. 65; *Dows* v. *Chicago*, 11 Wall. 108; *Esterbrook* v. *O'Brien*, 98 Cal. 671; *Weber* v. *San Francisco*, 1 Cal. 455; *Houghton* v. *Austin*, 47 Cal. 646; *Dean* v. *Davis*, 51 Cal. 407; *San Jose. Gas Co.* v. *January*, 57 Cal. 614; *Lent* v. *Tillson*, 72 Cal. 404; *Quint* v. *Hoffman*, 103 Cal. 506; *Hixon* v. *Oneida Co.*, 82 Wis. 515; *Hemingway* v. *Stansell*, 106 U. S. 399; *Allen* v. *Lafayette*, 89 Ala. 641; *Hitchcock* v. *Galveston*, 96 U. S. 341.) As to the distinction between the want of power to issue bonds, and irregularity in the manner of its execution, see *Hoag* v. *Greenwich*, 61 Hun, 622. The threatened sale by defendant of plaintiffs' property did not call for the interposition of a court of equity. (*Sanders* v. *Yonkers*, *supra; Clark* v. *Davenport*, 95 N. Y. 477; *Savings and Loan Soc.* v. *Austin*, 46 Cal. 416; *Dean* v. *Davis*, *supra; Moore* v. *Smedley*, *supra; Wharton* v. *School Directors*, 42 Pa. St. 358.) The legislature having charged boards of directors of irrigation districts with the duty of determining the amount of money necessary to be raised to pay all bond interest, the decision of the board is conclusive, in the absence of fraud or want of authority to levy an assessment for that purpose. (*Farmers' etc. Bank* v. *Board of Equalization*, 97 Cal. 318; *Evansville etc. R. R. Co.* v. *Evansville*, 15 Ind. 395; *Martin* v. *Mott*, 12 Wheat. 19; *Edwards* v. *People*, 88 Ill. 340; *Union Trust Co.* v. *Weber*, 96 Ill. 357; *S. C. etc. Co.* v. *Osceola Co.*, 52 Iowa, 26; *Marion County* v. *Harvey County*, 26 Kan. 203; Cooley on Taxation, 2d ed., 346.) The bonds in the hands of *bona fide* holders are not affected by the alleged irregularities. (*School District* v. *Stone*, 106 U. S. 187; *Oregon* v. *Jennings*, 119 U. S. 74.)

HARRISON, J.—The plaintiffs brought this action to restrain the defendant, who is the collector of Turlock irrigation district, from selling certain lands belonging to them, in satisfaction of a delinquent assessment

levied upon the real property in the district for the purpose of paying the interest on the outstanding bonds of said district for the year 1893. It is not alleged that any of the steps required by the statute for making the levy of the assessment were omitted, but the complaint is based upon the ground that the assessment was unauthorized by reason of the invalidity of the bonds, for paying the interest on which the assessment purports to have been levied. The plaintiffs herein did not pay this assessment upon certain parcels of land described in the complaint, and, after the same became delinquent, the collector made the publication of the delinquent list, as required by the provisions of the irrigation act, with a notice that on a certain day he would sell the same at public auction, for the purpose of making the said assessments. The present action was thereupon commenced to restrain said sale, and a preliminary injunction therefor was granted. The defendant demurred to the complaint, and, his demurrer having been sustained, the injunction was dissolved and judgment entered in favor of the defendant. From the order dissolving the injunction, and from the judgment in favor of the defendant, the plaintiffs have appealed.

The Turlock irrigation district was organized in 1887, and shortly after its organization an issue of bonds to the amount of $600,000 was voted by the district. Subsequently, in the year 1892, the district voted an additional issue of $600,000. In September, 1888, after the board of directors had declared its intention to sell its bonds to the amount of $550,000, it accepted a written offer made to it by L. M. Hickman, in which he proposed to buy the said amount of bonds "at the price of ninety per cent of the face value thereof," but was not to make payment therefor until he could sell the same at not less than that price. Said proposal contained also the following agreement: "I further offer and agree to pay to said district all sums I may receive for said bonds over and above said ninety per cent and the cost

and expenses of negotiating and making sale thereof. I further agree to use due diligence and all reasonable means to sell said bonds, and to sell the same for the best sum obtainable, but not to make any such sale without the consent of the president of the board of directors of said district; and in case said board shall by resolution request the surrender of said bonds, then I agree to surrender the same to said district on payment to me of all the costs and expenses theretofore incurred in the negotiation and sale thereof." Similar offers by Hickman subsequently made in reference to other portions of its bonds were accepted by the board; but it is alleged in the complaint that it was not intended thereby that he should take or pay for the said bonds, and that he did not in fact take or pay for any of said bonds.

In December, 1891, the board of directors entered into an agreement with J. R. Wilbur, by which he was authorized, as the agent of the district, to sell the bonds of the district to the amount of $252,500, at the rate of ninety per cent of their par value, and it is alleged that under this agreement a large portion of the bonds of the district were disposed of through his agency, at the lowest price allowed by law, but without taking any of the proceedings for the sale thereof required by section 16 of the act.

In 1891 the board of directors entered into a contract with R. W. Gorrill for the construction of a dam, which was to constitute a portion of the works of the district, and, for securing the payments to be made to him for the work that he should do under this contract, the following clause was inserted therein:

"The district shall advertise for sale, as prescribed by law, sufficient bonds for such payments, and said first party (Gorrill) shall bid therefor at least ninety per cent of the face value thereof, and, if no higher bids be received, such bonds shall be awarded to him, and he shall be credited in payment therefor the sum due him

from the district, and the district shall be credited on such payment under this contract the sum so bid for such bonds."

The board of directors did not, however, follow these terms of the contract, and did not advertise for the sale of any of its bonds, nor did Gorrill make, or the board receive, any proposal for the purchase of said bonds, nor did the board award any purchase of the bonds to Gorrill, but delivered to him bonds to the amount of $150,000, in exchange for the amount due him upon the contract, and as a payment thereon, at the rate of ninety per cent of their face value. It is also alleged in the complaint that bonds to the amount of a few thousand dollars were exchanged by the board with its officers for their salaries, and also in payment of certain obligations of the district.

At the date of the assessment, October 3, 1893, the amount of bonds outstanding, including those legally as well as illegally disposed of by the board, amounted to $524,000, and for the purpose of paying the interest thereon the board levied an assessment of $40,855.51. There was at that time in the treasury of the district to the credit of the bond and interest fund, the sum of $9,598, applicable to the payment of interest, and which, it is alleged, was more than sufficient to pay the interest upon the bonds that had been legally issued.

Section 15 of the irrigation act provides that, after the organization of the district, the board of directors shall determine the amount of money necessary to be raised "for the purpose of constructing necessary irrigating canals and works, and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of this act"; and shall thereupon submit to the electors of the district, at a special election to be called for the purpose, the question whether the bonds of the district shall be issued "in the amount so determined."

Section 16 of the act is as follows: "The board may sell said bonds from time to time, in such quantities as

may be necessary and most advantageous, to raise money for the construction of said canals and works, the acquisition of said property and rights, and otherwise to fully carry out the objects and purposes of this act. Before making any sale the board shall, at a meeting, by resolution declare its intention to sell a specified amount of the bonds, and the day and hour and place of such sale, and shall cause such resolution to be entered in the minutes, and notice of the sale to be given by publication thereof at least twenty days in a daily newspaper in each of the cities of San Francisco, Sacramento, and Los Angeles, and in any other paper at their discretion. The notice shall state that sealed proposals will be received by the board at their office for the purchase of the bonds till the day and hour named in the resolution. At the time appointed the board shall open the proposals and award the purchase of the bonds to the highest responsible bidder, and may reject all bids; but said board shall in no event sell any of the said bonds for less than ninety per cent of the face value thereof."

By section 12 the board of directors is given authority to acquire, either by purchase or condemnation, all lands and waters and other property necessary for the construction and maintenance of the canals and works of the district, and it is provided that "in case of purchase, the bonds of the district hereinafter provided for may be used at their par value in payment." These are the only provisions in the act for any disposition by the directors of the bonds of the district, and it follows that the only mode in which they can exercise their power of disposing of the bonds, so that they may become valid obligations against the district, is either to exchange them for property at their par value, or to sell them for money in the open market, under the restrictions and limitations given in section 16, at not less than ninety per cent of their face value. The express provision giving to the board power to exchange them for certain property at their par value, excludes the right of the board to exchange them for any other purpose, or to

dispose of them in any other manner than by the sale authorized by section 16.

It is provided in section 37 that "the cost and expense of purchasing and acquiring property, and constructing the works and improvements herein provided for, shall be wholly paid out of the construction fund"; and the authority given to the board of directors, in the subsequent portion of this section, to levy special assessments for defraying the expenses of the organization of the district, and the payment of the salaries of the officers and employees, clearly indicates that the construction fund thus referred to consists of the moneys received from the sales of the bonds authorized by section 16, and that this disposition of the bonds is not only limited to providing for this construction fund, but that they can be applied to no other object. It was held in *Tregea* v. *Owens*, 94 Cal. 317, that the directors have no authority to levy an assessment for the payment of the expenditures authorized by section 37, without a previous approval of the voters of the district, at an election held for that purpose. Under the principles of that case the directors have no authority to appropriate the bonds which the electors have voted to issue for the construction of the irrigation works, to the payment of salaries, or expenditures incurred in the management of the property. If, instead of selling the bonds, as directed by section 16, they could use them for these purposes, the provisions of section 41 would be futile, and, under an improvident or reckless board of directors, the bonds, which had been voted for the purpose of raising "money" with which to construct a canal, might be frittered away in useless expenditures and salaries, and the district receive no benefit whatever.

The irrigation act is evidently framed upon the theory, and with the intention on the part of the legislature, that the affairs of the district shall be conducted upon a ready-money basis, and not upon credit, and, to enable the directors to carry out this purpose, provision

is made for levying special assessments for the pay-
ments of salaries, wages, and expenses of management,
and also for the sale of bonds by which to make the
payments required upon the contracts for the construc-
tion of the works.    This is clearly seen by the provision
in section 16 authorizing the board to sell the bonds
"from time to time in such quantities as may be neces-
sary and most advantageous to raise money for the con-
struction of said canals and works," coupled with the
provision in section 36 that "the board may draw from
time to time from the construction fund, and deposit in
the county treasury of the county where the office of the
board is situated, any sum in excess of the sum of
twenty-five thousand dollars"; and requiring the county
treasurer to receive and be responsible for the disburse-
ment of the same.    The provision of section 15 requir-
ing the directors to estimate and determine the amount
of "money" necessary to be raised for the construction
of the works, and to submit to the electors of the district
the question whether bonds shall be issued "in the
amount so determined," clearly implies that the esti-
mate is to be of the "amount of money" which may be
received upon a sale of the bonds at not less than ninety
per cent of their face value; that the cost of the works
is to be estimated in money and not in bonds, and is to
be paid out of the construction fund created by the sale
of the bonds.    For the protection of the taxpayers a
limit is placed upon the rate at which the bonds may be
sold—ninety per cent of their face value—and, as a
special assessment cannot be levied without their vote,
they have control over the expenditures of the district.
The wisdom of this provision is manifest, and is fully
illustrated in the financial history of irrigation district
bonds during the last few years—a matter of which we
can take judicial knowledge.    If the construction of the
works is to be paid for in money immediately upon
their completion, or in installments as the work pro-
gresses, a contract for their construction can be obtained

at a much less price than if payment is to be made in the obligations of the district whose value is constantly fluctuating.

The plaintiffs base their right to the relief sought in the complaint upon the grounds that, during the first ten years after the issuing of the bonds, the board of directors have no authority under the act to levy a greater assessment in any one year than will be "sufficient to raise the annual interest on the outstanding bonds," and that the greater portion, if not all, of the outstanding bonds of the district have been illegally issued, and were received, and are now held, by the persons to whom they were issued with such knowledge of their invalidity, by reason of having been illegally issued; that they do not constitute valid obligations of the district upon which any interest should be paid, or for whose payment the defendant is authorized to sell the lands of the plaintiffs. The plaintiffs do not show the amount of bonds which may have been legally disposed of by the board of directors, but allege that they are unable to state whether any have been legally disposed of. In support of this averment, they allege that neither the secretary nor the board of directors have kept any record of the bonds sold, their number, the date of sale, the price received, or the name of the purchaser, as required by section 15 of the act, and that the district has never had any such record; that, although they have endeavored to ascertain the number and amount of bonds sold by the district, they have, by reason of the omission to keep such record, failed to ascertain the same, and are unable to state said amount; and they contend that the failure of the proper officers to keep a bond register, as required by the act, relieves them from the necessity of showing, with greater definiteness, that any of the bonds have been sold or otherwise legally disposed of, and that, even if it should be shown that a portion of the outstanding bonds are legal obligations of the district, the portion is so small that the assessment

in question is so excessive of the requirements to pay the interest thereon as to be in itself illegal.

While the authority given to the board of directors by section 22, to levy an assessment sufficient to raise the annual interest on the outstanding bonds, is limited to providing for the interest on the bonds that are outstanding at the time of the levy, it does not require that the amount of the assessment shall be the exact amount of that interest. The phrase "sufficient to raise" the annual interest is more elastic than would be the phrase "to the amount of" the annual interest, and must be held to authorize the board of directors to exercise a reasonable discretion in determining the amount to be levied. It is a matter of common experience that the entire levy of a tax or an assessment is very rarely paid as it matures, and the provision in the act for the sale of any real estate upon which the assessment is delinquent, and, if there be no other bidder, its purchase by the district, shows that it was in the mind of the legislature that the assessment might, in some instances, be not fully paid, and justifies the conclusion that it was not intended that the assessment should be the exact amount of the interest. The board of directors must be allowed to exercise a discretion in determining how great an assessment will be "sufficient to raise" the annual interest, and, unless it can be seen that they have abused this discretion, courts ought not to interfere with their action. If, however, the disparity between the amount of the assessment and the amount of the annual interest is so great as to make it appear that their action was improper, and not in the exercise of any discretion, so that the assessment is excessive, courts are authorized to prevent its enforcement. Although the levying of an assessment is an act of a legislative character, yet the board of directors is not clothed with the supremacy of the legislature in this respect, but is in the exercise of a delegated power, and subject to control by the judiciary if it steps beyond the limits of the

power conferred upon it. As the assessment can be levied for the payment of only the interest upon the outstanding bonds, the property owner has the right to show that there are no outstanding bonds upon which there is interest to be paid, or that the amount of the assessment is not within any reasonable estimate of that interest.

The complaint contains a great deal of matter relative to the conduct of the directors in the management of the district, which cannot be considered for the purpose of determining the validity of the assessment. For this purpose the court could not look into the contract with Gorrill for building the dam, whether it was for an excessive price, or was properly let in accordance with the terms of the statute. Neither is the validity of the election for the second issue of bonds a matter of consideration in this proceeding. Nor is it a ground for impeaching the assessment that former assessments for interest were in excess of the requirements for the interest on the bonds then outstanding, or that the moneys so raised had been misapplied by the directors. If, at the time of the levy of the present assessment, it was required for the payment of interest on the outstanding bonds of the district, the directors were authorized to levy it, and the property of the plaintiffs is liable for its proportion thereof. The complaint is far from being clear in all its averments, but a careful examination leads to the conclusion that it is sufficiently alleged therein that none of the outstanding bonds of the district were issued in conformity with the requirements of the statute, and that the persons to whom they were issued took them with such knowledge of their invalidity that they do not constitute enforceable obligations against the district, for which the property of the plaintiffs is liable. The averments of the complaint are sufficiently pointed to these defects against the liability of the plaintiff's property, so that, if they are true, the plaintiffs would be entitled to the relief they seek.

The complaint does not definitely show that there are

no bonds outstanding upon which the district is liable for the interest; and although it is alleged, in general terms, that all of the outstanding bonds were illegally issued, the specific allegations of the circumstances under which they were severally disposed of do not cover all of the bonds which are outstanding; nor is it entirely clear and conclusive in respect to the amount of such bonds; but this lack of clearness and precise averment is due to the mode in which the business of the district has been conducted by the officers of the district, and the averments of the complaint in that respect are sufficient to exonerate the plaintiffs from the necessity of making their averments more precise. It is fairly to be inferred therefrom that if any of the outstanding bonds were legally disposed of, their amount is so small that the assessment was excessive; at least, the averments of their illegality are sufficient to require the defendant to show that he is authorized to make the sale of their property. Deducting from the $524,000, alleged to be the amount of the outstanding bonds, the $150,000 thereof which are specifically shown to have been illegally delivered to Gorrill, and the amount of the other bonds of which specific averment is made, there remains only $370,000 for which an assessment for interest could be levied. The interest on this amount at the rate of six per cent per annum would be $22,200, and, as there was nearly $10,000 in the treasury applicable thereto, it must be held that the assessment of upward of $40,000 was unauthorized. If the facts set forth in the complaint are true, they sufficiently justified the refusal of the plaintiffs to pay the assessment, and call upon the defendant either to deny their existence or to establish other facts which will give him the right to collect the assessment by a sale of the plaintiffs' lands.

As the inability of the plaintiffs to determine the amount of the bonds that have been legally disposed of results from the failure of the officers of the district to keep such a record of their disposal as is required by

the act, by which the plaintiffs are exonerated from the necessity of making a definite allegation in this respect, the rule of equity which requires the payment of that portion of an assessment which is admitted to be just, as a condition of invoking the aid of equity, becomes inapplicable.

Whether a *bona fide* holder of any of the bonds thus illegally disposed of could enforce them against the district, or whether the district would be liable for the interest upon any of the bonds thus illegally disposed of, is not involved in this action. It is not shown by the complaint that any of the bonds are in the hands of a *bona fide* holder, and, in the absence of any averments to the contrary, it is to be assumed that Gorrill and the other persons to whom they were delivered still retain them. Neither is the right of Gorrill to a recovery against the district for the work done by him under his contract presented in this action. If the benefits received and enjoyed by the district under his performance of the contract give him an equitable right of recovery therefor, such right is independent of any liability of the district upon the bonds. If the bonds were issued to him in violation of the statute, they cannot, in his hands, be valid obligations against the district, even though they were taken in payment for his work. The law is well settled that one dealing with a municipal corporation is charged with a knowledge of all the limitations upon the power of its officers, and that he can have no right of action upon its written obligation if it was entered into in disregard of statutory requirements. Gorrill must be held to have taken the bonds with notice of their illegality by reason of the want of power in the board of directors to dispose of them in this manner, or without following the course prescribed in section 16 of the act.

It was not necessary to join the district as a party to the action. No relief is sought against it, nor is its presence necessary to a proper solution of the questions presented by the complaint. The plaintiffs are not

seeking to set aside or vacate the assessment, or to pre-
vent its enforcement, except as against their own lands,
which constitute but a small fraction of the district, and
the validity of the assessment is involved only inciden-
tally as it may be invoked by the defendant in support
of his threatened action.    The defendant is charged with
threatening to do an act which will result in injury to
the plaintiffs, under the color of an authority which, it
is alleged, he does not possess, and the plaintiffs are
merely seeking to have him restrained from doing this
act.    The district can be represented only by its officers;
and for the purpose of collecting the assessment, and
therein defending the validity of the levy, the collector
represents the district as fully as did the directors for
the purpose of levying it.    If, upon the coming in of
his answer, the court shall be of the opinion that the
presence of the district is essential to a complete deter-
mination of the controversy, it can order it to be brought
in (Code Civ. Proc., sec. 389); but, upon the allegations
in the complaint, its presence is not necessary to a deter-
mination of the rights of the plaintiffs as against the
defendant.    A demurrer for defect of parties defendant
is generally but technical, and, unless the omitted party
is indispensable to giving the relief sought, the court
should not sustain such demurrer, but should order him
to be brought in, if it shall be made to appear that his
presence is proper for a determination of the entire
controversy.

Neither was it necessary to make Gorrill or Hickman
defendants herein.    The transactions with Hickman
did not have the effect to make him a purchaser of the
bonds, but he thereby became merely the agent of the
board for their sale, and, whatever right of action Gor-
rill may have against the district, either upon his con-
tract, or upon the bonds received by him, will not be
affected by the judgment herein.

The order dissolving the injunction and the judgment
in favor of the defendant are reversed, and the court
below is directed to overrule the demurrer to the com-

plaint, with leave to the defendant to answer within such time as the court may direct.

VAN FLEET, J., McFARLAND, J., TEMPLE, J., and HENSHAW, J., concurred.

Rehearing denied.