CAMERON COUNTY WATER IMPROVE-
MENT DIST. NO. 8 v. DE LA
VERGNE ENGINE CO.

No. 8597.

Circuit Court of Appeals, Fifth Circuit.

Dec. 9, 1937.

Rehearing Denied Jan. 11, 1938.

H. L. Faulk, of Brownsville, Tex., and J. C. Looney and James R. Norvell, both of Edinburg, Tex., for appellants.

Tom M. Davis, of Houston, Tex., and V. W. Taylor, of Brownsville, Tex., for appellee.

Before FOSTER and HOLMES, Circuit Judges, and STRUM, District Judge.

HOLMES, Circuit Judge.

The appellee recovered a judgment against appellants for a debt evidenced by a note of the Cameron County Water Improvement District No. 8, indorsed by C. P. Barreda, its president and a large landowner therein. The note was given for the purchase price of a pump, engine, and equipment sold to the district by appellee; and the judgment provided for the foreclosure of a chattel mortgage or title retention lien on the property sold, of a pledge lien on sixty-seven bonds of the district of the par value of $1,000 each belonging to C. P. Barreda, of a pledge lien on three notes of the district, aggregating $29,743.36, secured by thirty-three additional bonds of the district, and for a deficiency judgment against both of the appellants.

According to the terms of the original contract, appellee agreed to furnish and install the machinery for $32,755, payable $1,000 cash, and to accept the note of the district, indorsed by Barreda, for the balance, with interest at the rate of 6 per cent. per annum, payable one year after the delivery and installation of the machinery. Subsequently, an additional credit in the sum of $1,049.05, covering freight and other items which had been advanced by the district, was allowed on the purchase price, and a note indorsed by Barreda was taken for the balance, amounting to $30,705.95. When the note became due on December 5, 1931, the district was unable to pay the same, and an extension was granted by appellee, upon the indebtedness being further secured by notes and bonds of the district. Upon the expiration of said extension, the district and Barreda represented that they were unable to pay at that time, but that Barreda was going to obtain a large sum of money, and would pay the entire indebtedness out of said sum. Relying upon this assurance, appellee granted a further extension to January 1, 1933. After the last extension, there was paid on the indebtedness the sum of $2,103.42. The judgment appealed from is for the balance due on the note with interest.

The contract of purchase, pursuant to which the note was given, was contrary to the express provisions of the Constitution of the State of Texas and of title 128, article 7466 et seq., of the Revised Statutes of said state, as amended, Vernon's Ann.Civ. St. art. 7466 et seq. The applicable constitutional provisions forbid the Legislature to authorize the "issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified

property tax-paying voters of such district, and the proposition adopted," article 16, § 59; and the Legislature is without power to authorize the payment of any such claim, article 3, § 53. It does not appear that the Legislature has attempted in any of its various acts to violate these constitutional restrictions. On the contrary, it has passed statutes to safeguard the taxpayers against unauthorized borrowing and spending by improvement districts. Article 7622, as amended by Acts 1929, 2d Called Sess., c. 6, § 1, and articles 7652, 7710, 7739, 7748, 7758, 7807 of the Revised Civil Statutes of the State of Texas 1925, Vernon's Ann.Civ.St. arts. 7622, 7652, 7710, 7739, 7748, 7758, 7807.

According to the undisputed testimony, there has never been an election in the district authorizing the issuance of the note to appellee. It is not contended that any such election has been held. Under these circumstances, there can be no recovery of the purchase price upon the express contract, because entered into in violation of a positive rule of law, and no recovery thereof upon an implied contract, because the parties should not be allowed to do indirectly what they are prohibited from doing directly. The parties to the contract were charged with notice of the constitutional and statutory limitations upon the powers of the district, and it is presumed that they made the contract sued on with full knowledge that no right of action could be maintained upon the note given for the purchase price.

At the time the contract to buy the machinery was entered into, the district had voted bonds in the total amount of one million dollars for the payment of rights of way, engine, pumps, equipment, and other costs of organizing and constructing the district; but the bonds were neither sold nor exchanged for the machinery, though some of them got into the hands of Barreda and were later pledged to secure his indorsement. There is a contention that in voting the bonds the taxpayers approved this purchase, because an item of $52,000 for "engine, pumps," etc., was advertised as part of the construction costs to be paid for with the proceeds of the bond issue; but the contract which forms the basis of this suit was not made pursuant to the statutes applicable to purchases with bonds or the proceeds thereof, since the bonds were neither exchanged for the property, as provided in article 7710, R. C. S. T., nor sold

and the machinery purchased for cash, as is clearly intended in article 7748, R. C. S. T., which requires a warrant to be drawn on the depository for "the contract price in favor of the contractor or his assignee." It is probably true that, if the bonds had been sold and this machinery paid for out of the proceeds thereof, or if they had been exchanged for the machinery, the transaction would have been within statutory and constitutional authorization; but the law controlling the decision of this controversy arises out of what the parties did, and not what they might have done. They neither sold the bonds nor exchanged them for the property. They bought the engine, pump, and equipment on credit, making a small cash payment. The statutory scheme contemplates an exchange or a cash transaction. As the evidence shows and the judgment appealed from fully demonstrates, the scheme was disregarded. The judgment here is for $40,058.71, the balance due on a note with interest. If it is not paid, the engine and pump will be sold together with the notes and bonds of the district. One hundred bonds of the par value of $1,000 each, which could not legally be sold below 90, may be lost with the chattel purchased largely on credit; and finally a deficiency judgment may be taken against the district. No argument can reasonably be made that this transaction was substantially the same as that contemplated by the voters who authorized the bond issue. The disastrous financial consequences rendered probable if this judgment should be upheld illustrate the wisdom of the law in restricting the power of the district to create debts.

The appellee relies strongly upon ratification and estoppel; but neither may be invoked to enforce a contract entered into in violation of a constitutional provision which was intended to safeguard taxpayers against such financial difficulties as now envelop this improvement district by reason of its having ignored the statutory scheme requiring it either to sell the bonds and purchase equipment for cash, or to exchange them for property. No vote of the taxpayers having authorized the indebtedness, the contract is a nullity, because opposed to the Constitution, laws, and settled public policy of the state. Complete performance of the contract by appellee does not prevent the district from pleading its want of power to enter into the contract or the illegality of its terms.

In the alternative, appellee seeks to uphold the judgment upon the basis of a quantum meruit; but we have pointed out that these plain requirements of the Constitution and laws of the state are for the security of the taxpayers, and courts are not at liberty arbitrarily to set them aside where the district has received the benefits of a contract which it had no power to make. As stated in Hagerman v. Hagerman, 19 N.M. 118, 141 P. 613, 617, L.R.A. 1915A, 904, to hold in these circumstances that a party may recover upon a quantum meruit "is to open the door to any course of dealing with the members of a town board which they may for the time being see fit to pursue." If the principle contended for by appellee may be invoked, "then there is no necessity for statutory limitations upon the powers of such boards, and no legal effect to any such statute." Hughson v. Crane, 115 Cal. 404, 47 P. 120; Litchfield v. Ballou, 114 U.S. 190, 5 S.Ct. 820, 29 L.Ed. 132; Johnson County Savings Bank v. Creston, 212 Iowa 929, 231 N. W. 705, 237 N.W. 507, 84 A.L.R. 926.

Where a contract is invalid because the particular officer who made it was wanting in authority, or because of some defect or irregularity in the agreement, it is only necessary for the governing body to have full knowledge of all the material facts in order to enable the municipality to ratify it or to become estopped to plead its invalidity; but, where the contract is absolutely void because of want of power in the corporation itself or by reason of its being in violation of some positive rule of law prohibiting the execution of it, the agreement subsequently can neither be ratified by any act nor upheld under the doctrine of estoppel by any conduct of the corporation. To what effect are constitutional limitations upon the powers of municipalities, if they may be avoided by acts of ratification, or by conduct which ordinarily works an estoppel? Fundamental laws to correct evils, made upon great deliberation and in the most solemn manner, should not be evaded by strained and overlearned refinements, but should be liberally construed with the evils in mind which were intended to be corrected.

Since the contract for the purchase of the engine and equipment, the note given to evidence the same, the mortgage securing the note, and the extension agreements were in violation of constitutional and statutory provisions, and, since no recovery may be had thereon, the indorser of the note was not bound. The agreements between the parties, including Barreda, were entirely in writing. The first contract was for the purchase of the engine and pump. It expressly provided that all previous communications between the parties, whether oral or written, were abrogated. When the note became due, the first extension agreement was made. It recited that Barreda's liability should not be affected thereby, and excluded all prior negotiations, unless in writing and duly executed by the parties thereto.

The second extension agreement provided that Barreda's personal obligation with respect to the indebtedness should not be thereby affected. All of these agreements evidence an intention that Barreda's obligation is that of a surety and that his liability is secondary. When the primary obligation of the district fails, because the contract of purchase was in excess of its powers and contrary to positive law, the liability of Barreda as an indorser or surety fails with it. Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S.W. 29, 750, 35 L.R. A. 241; Edwards County v. Jennings, 89 Tex. 618, 35 S.W. 1053; Edwards County v. Jennings, Tex.Civ.App., 33 S.W. 585; 21 Tex.Jur. p. 177, § 44; Dickerson v. McConnon & Co., Tex.Civ.App., 248 S.W. 1084; Brandt on Suretyship and Guaranty, p. 107, § 79; Griffith v. Reed, 21 Wend., N. Y., 502, 34 Am.Dec. 267. In Miller v. Stewart, 9 Wheat. 680, 706, 6 L.Ed. 189, the court said:

"Nothing can be better settled, than the doctrine that, if an obligation be dependent on another obligation (and, by parity of reasoning, upon the legal existence of another instrument), and the latter be discharged, or become void, the former is also discharged. Sheppard, in his Touchstone (p. 394), puts the case, and illustrates it, by adding, 'as, if the condition of an obligation be, to perform the covenants of an indenture, and afterwards the covenants be discharged, or become void; by this means, the obligation is discharged, and gone forever.'"

In accordance with the prayer of its cross-bill, in which Barreda joins, the Cameron County Water Improvement District No. 8, having tendered the engine, pump, and equipment to appellee, is entitled to a decree directing the surrender by appellee, and the cancellation, of its note for $30,-

705.90, given for the balance due on the purchase money; and, since there can be no lien without a debt and since Barreda has evidenced of record his willingness that all notes, bonds, and obligations acquired by appellee from him be returned to the aforesaid district, the latter, in accordance with its prayer, is further entitled to a decree directing appellee to surrender to it all notes and bonds of the district pledged to secure the indorsement of Barreda upon any of said notes and bonds, or otherwise.

Although the judgment against appellants may not be sustained upon an express or implied contract, the appellee, in accordance with its prayer for alternative relief, is entitled to a judgment against the district awarding it the possession of its property and the reasonable rental value thereof ($6,000 a year, as found by the court below) for a period within the local statute of limitations. City of Floydada v. American La France & Foamite Industries, 5 Cir., 87 F.2d 820.

The judgment of the District Court is reversed, and the cause remanded, with directions to enter a decree in accordance with this opinion.