## NATIONAL CAB COMPANY v. WILLIAM KUNZE AND OTHERS.[1]

December 19, 1930.

No. 28,383.

[1]Reported in 233 N. W. 838.

*Schwartz & Halpern,* for appellant.

*Neil M. Cronin,* City Attorney, and *Thomas B. Kilbride,* Assistant City Attorney, for respondents.

WILSON, C. J.

The plaintiff appealed from a judgment entered pursuant to an order dismissing the action after a trial thereof.

Plaintiff had licenses to operate about 45 taxicabs on the streets of Minneapolis. The city council has in form revoked these licenses. Plaintiff brought this action to restrain the mayor, chief of police, the comptroller of the bureau of licenses, and the taxicab inspector from putting it off the streets, and the action is based upon the theory that the revocation was a nullity because there was no cause for revocation and plaintiff had not been given a hearing as provided by the city ordinance.

Under the city home rule charter, c. VIII, § 1, the control of the streets rests with the city council, which is also authorized to license taxicabs, c. IV, § 5, 31st. The council issued the licenses involved to plaintiff. The charter, c. IV, § 16, provides that "any license issued by authority of the city council may be revoked by the mayor or city council at any time   *   *   *."

We construe these provisions of the charter as not self-executing. The power granted contemplated some action of the council providing for some orderly procedure defining the duties and responsibilities of taxicab operators and the procedure for licensing and revocation. The city very appropriately, pursuant to the charter, passed an ordinance on January 22, 1929, superseding prior ordinances. Its purpose is to license and regulate taxicab owners and taxicab drivers; to prescribe duties under which they may do business on the streets; to fix rates of fare; to provide additional duties to the police department; to provide for traffic regulations for such vehicles; and to provide punishment for violations of the ordinance. The ordinance requires insurance and a $2,500 bond for the protection of the public. It requires an annual fee of $15 for each vehicle. It provides in § 21 that any such license may be revoked by the mayor or city council at any time for cause, after a hearing. Plaintiff now places its hope on this last clause.

The city now claims that § 21 of the ordinance, in so far as it requires cause and a hearing before such a license may be revoked, is invalid as contrary to the unrestricted authority in the charter to revoke such licenses at any time. Of course if there is a conflict, the ordinance, the inferior law, must yield to the charter, the superior law. Having in mind however the general provisions of the charter which do not describe how the power is to be exercised, and the necessity for determination of many details incident to and in regulation of such business, we are of the opinion that the power given by the charter calls for the exercise of municipal legislation to protect both the public welfare and the investment of the operator and to provide a definite course of procedure through which those desiring to do so may enter such business with some certainty as to their duties and responsibilities. We are of the opinion that the ordinance is valid.

Plaintiff has a right to review by certiorari the action of the council in revoking the licenses. State ex rel. Sholund v. City of Duluth, 125 Minn. 425, 147 N. W. 820. Perhaps that was not the exclusive remedy. Bilsborrow v. Pierce, 101 Minn. 271, 112 N. W.

274. But with the record as it is in this case certiorari would not give an adequate remedy, as a return of the record for a hearing in certiorari would be inadequate. In certiorari the relator would be bound by the record. It is now asserting a right to attack the record, which it could not do in certiorari.

■ If plaintiff has had no hearing or if there is no cause for revocation, the defendants, who intend only to enforce the law as they understand their duties, are about to act in violation of the law and under a mistaken view of their duties under the law. Their conduct, if continued, will impair plaintiff's property and its business. If defendants proceed as they intend and how are doing, they will cause plaintiff a serious irreparable loss for which it will have no adequate remedy at law. It is much like acting under an invalid law. If there was a hearing and if there was cause for revocation, the revocation is valid but otherwise the action of the council was invalid. In such a situation injunction is a proper remedy. 2 Joyce, Injunctions, §§ 1372a and 1377a; William Fox Amusement. Co. v. McClellan, 62 Misc. 100, 114 N. Y. S. 594; 32 C. J. p. 261, § 411; 14 R. C. L. p. 431, § 133; p. 440, § 142; and p. 447, § 147; Vincent v. City of Seattle, 115 Wash. 475, 197 P. 618; Bear v. City of Cedar Rapids, 147 Iowa, 341, 126 N. W. 324, 27 L.R.A. (N.S.) 1150.

■ The city was a proper party but not a necessary one. Hughson v. Crane, 115 Cal. 404, 47 P. 120; Anderson v. Orient F. Ins. Co. 88 Iowa, 579, 55 N. W. 348. This action is to stay the hand of these particular defendants. They are really the only ones, if anybody, that need be stopped.

■ The difficulty in this case is that at the conclusion of the trial the action was dismissed on motion of defendants. There were no findings as to the two important disputed questions, namely, was plaintiff given a hearing, and was there cause for revocation? This was error. The evidence is in conflict on both of these questions. It is not our privilege to find the facts. These facts must be determined in order to reach the correct result. The judgment is reversed, the temporary injunction and bond are reinstated, and the cause is remanded to the trial court to make findings of fact

upon the evidence already taken, together with any additional evidence, if any, as the court in its discretion may permit either or both of the parties to offer.

Reversed.