OSCAR MOSKOVITZ v. CITY OF ST. PAUL AND OTHERS.[1]

December 8, 1944.

No. 33,897.

[1]Reported in 16 N. W. (2d) 745.

*Jerome Hoffmann* and *Joseph M. Donahue,* for appellant.

*Bruce J. Broady,* Corporation Counsel, and *Ira Karon,* Assistant Corporation Counsel, for respondents.

STREISSGUTH, JUSTICE.

Since 1934, plaintiff has conducted an off sale liquor business in St. Paul, in connection with which he has applied for and obtained off sale liquor, off sale malt beverage, and confectionery licenses, from year to year. By this suit, he seeks to restrain the city and its officers and its agents from revoking the licenses issued to him for the year 1944.

On April 6, 1944, plaintiff pleaded guilty in the United States district court of Minnesota to two counts of an information charging him with separate violations of Maximum Price Regulation No. 193 of the Office of Price Administration, (1) by selling 50 cases of distilled spirits at a price above the fixed maximum, and (2) by offering to sell and deliver 1,500 cases of distilled spirits at a price above such maximum. The offenses charged were misdemeanors under the Emergency Price Control Act of 1942 (56 Stat. 23, 50 USCA, Appendix, §§ 901-946), as amended by the Inflation Control Act of 1942 (56 Stat. 765, 50 USCA, Appendix, §§ 961-971), and subjected offenders to a maximum penalty of $5,000 and imprisonment of one year for each violation.

Promptly upon discovery of defendant's plea and consequent conviction and under date of April 8, 1944, the city license inspector notified plaintiff by letter, delivered to him on that date, as follows:

"Owing to your arrest and guilty plea to the charge of OPA violations, a resolution will be presented to the City Council at 10 A. M., Friday, April 14, 1944, asking revocation of your Off Sale Liquor, Off Sale Malt Beverage, and Confectionery licenses.

"If you desire to be heard in connection with the foregoing, you may appear at the time and place specified above."

The matter came on for hearing at a meeting of the council at the time so specified. Presented at the opening of the meeting was a resolution—

"That Off Sale Liquor License No. 750, expiring January 31, 1945, Confectionery license No. 139, expiring May 14, 1944, and Off Sale Malt Beverage license No. 2400, expiring May 14, 1944, issued to Oscar Moskovitz at 1577 University Ave. be and the same are hereby revoked upon recommendation of the Bureau of Police because of the indictment of Oscar Moskovitz by the United States Government on various charges and his guilty plea to two of said charges."

Because of legal questions raised by plaintiff's counsel, the proffered resolution was not acted upon. Instead, a motion was made and

carried that the matter be laid over until April 18 and referred to the corporation counsel for study and report.

On April 18, the council again convened. On recommendation of the corporation counsel, the resolution presented on April 14 was by motion withdrawn, and the following resolution offered and unanimously adopted:

"Resolved, it appearing that one Oscar Moskovitz, an off-sale liquor and other licensee plead guilty in the local Federal Court to two counts in an Information charging him in substance with selling and offering to sell liquor in violation of the Emergency Price Control Act of 1942, and the regulations and orders made thereunder, such plea then subjecting him upon each such count to a maximum penalty of $5,000.00 and imprisonment of one year.

"Accordingly, the Council finds and concludes that said Oscar Moskovitz, because of the proceedings in Federal Court, was guilty of misconduct, and upon the further recommendation of the Bureau of Police, various licenses heretofore issued to said Moskovitz be and they are hereby revoked; viz: Off-sale Liquor License No. 750, Confectionery License No. 139 and Off-Sale Malt Beverage License No. 2400."

Section 127D(1) of the charter of the city of St. Paul provides:

"The council shall have full power and authority:

"1. To revoke for misconduct of a licensee any license granted under this charter."

Section 14 of ordinance No. 7537 (1941 Compiled Ordinances of the City of Saint Paul, Section 1185), pertaining to liquor licenses, reads as follows:

"Any license granted hereunder may be revoked for a violation of any provision of this ordinance or of the Liquor Control Act of the State of Minnesota. If the violator is the holder of an 'on sale' license, such license may be revoked by the City Council. If the violator is the holder of an 'off sale' license, such license may be revoked by the City Council or it may be revoked by the Liquor

Control Commissioner, but if revoked by the City Council, such revocation shall not be made until the City Council has held a public hearing thereon."

 The claim that the notice or letter from the license inspector did not meet the requirements of due process of law may be by-passed safely without a barrage, or even a salvo, of authorities. Mere inspection of the letter reveals that plaintiff was thereby fully advised of the nature of the charges against him; and no complaint is made that six days' notice did not afford him a reasonable opportunity to prepare for the hearing on the charges. Nor is it of any importance that the original resolution was withdrawn on April 14 and the hearing on the charges deferred to an adjourned meeting on April 18, at which a redrafted resolution was submitted and adopted. Plaintiff was present with his attorney during all of the proceedings and asked for no postponement of the second hearing. As the subject matter of the two resolutions was identical, no new notice of hearing was required.

██ Plaintiff's principal contention is that the quoted provision of the charter is not self-executing, and that, unless his misconduct was such as was condemned by section 14 of the ordinance, his license could not be revoked. To determine whether this contention is sound, we need only apply the test laid down by Mr. Justice Mitchell, with his usual clarity and precision, in Willis v. Mabon, 48 Minn. 140, 150, 50 N. W. 1110, 1111, 16 L. R. A. 281, 31 A. S. R. 626, in discussing whether a constitutional provision there under consideration was self-executing:

"* * * The question in every case is whether the language of a constitutional provision is addressed to the courts or the legislature,—does it indicate that it was intended as a present enactment, complete in itself as definitive legislation, or does it contemplate subsequent legislation to carry it into effect? This is to be determined from a consideration both of the language used and of the intrinsic nature of the provision itself. If the nature and extent of the right conferred and of the liability imposed is fixed by the

provision itself, so that they can be determined by the examination and construction of its own terms, and there is no language used indicating that the subject is referred to the legislature for action, then the provision should be construed as self-executing, and its language as addressed to the courts."

In State ex rel. Furlong v. McColl, 127 Minn. 155, 158, 149 N. W. 11, 12, this court applied the same test in determining whether a provision of the St. Paul charter was self-executing. In that case the court, speaking through Mr. Justice Hallam, reiterated the test laid down in the Willis case, adding:

"* * * It is not important that other legislation may be contemplated to supplement it [the charter provision]. If the provision is to be operative at all events, and the nature and extent of the rights conferred and the liabilities imposed are fixed by it, so that they can be determined by examination and construction of its terms, and the provision itself furnishes a complete working rule of conduct, it will be held self-executing, and the legislative authority will not be required to go through the perfunctory process of passing it in order to give it vitality."

City of St. Paul v. Twin City Motor Bus Co. 187 Minn. 212, 245 N. W. 33; National Cab Co. v. Kunze, 182 Minn. 152, 233 N. W. 838; State v. Olinger (Iowa) 72 N. W. 441; and City of Council Bluffs v. Waterman, 86 Iowa 688, 53 N. W. 289, are illustrative of charter provisions calling for positive action on the part of the council to carry out authority granted by the charter.

■ Applying the simple tests suggested in the Willis and Furlong cases, can there be any doubt as to the self-executing properties of section 127D(1) of the charter? Under its provision fixing "misconduct" as the standard authorizing revocation of a license, the council's "discretion is not unconfined and vagrant. It is canalized within banks that keep it from overflowing." See, dissent of Mr. Justice Cardozo in Panama Refining Co. v. Ryan, 293 U. S. 388, 440, 55 S. Ct. 241, 256, 79 L. ed. 446, 469. The term "misconduct" has a well-accepted and easily understood meaning.

Simply and informally defined, it is "improper or wrongful behavior." Winston, Simplified Dictionary. Conduct which is condemned by a positive law of the land and for which severe punishment is prescribed certainly cannot escape being labelled with the prefix "mis". And any other "improper or wrongful behavior" of substantial character and of public concern in relation to the operation of a licensed business, though not necessarily constituting a violation of law or implying corruption or wilfulness, must likewise fall within the embrace of the charter provision. Where "misconduct" is charged, it is for the council, in the exercise of an honest discretion, to determine whether the acts under surveillance are those which the law and a sound public opinion will condemn and whether continuance of the licensee in business is detrimental to the public good.

Independent of any supplemental legislation, it should be clear that the council under the charter provision is authorized to revoke any license issued by it for "misconduct," in the generally accepted meaning of that term, subject only to the qualification that the power of revocation be not used capriciously, arbitrarily, or oppressively. With or without the ordinance, the council definitely had the power to decide, in the reasonable exercise of its administrative functions, whether particular conduct of a licensee constituted "misconduct" within the meaning of the charter. See, State ex rel. Bluemound Amusement Park, Inc. v. Mayor of Milwaukee, 207 Wis. 199, 240 N. W. 847, 79 A. L. R. 281.

■ Plaintiff argues, however, that by adopting section 14 of ordinance No. 7537 the council has recognized that the charter provision required supplemental legislation to vitalize it, and that, under the rule of practical or contemporaneous construction, the courts must adopt the council's construction and limit the grounds for revoking licenses to those specified in the ordinance. The doctrine referred to has frequently been applied by courts to aid them in the construction of doubtful and ambiguous statutes. See, Brown v. United States, 113 U. S. 568, 5 S. Ct. 648, 28 L. ed. 1079; Hart, An Introduction to Administrative Law, p. 376. But, even grant-

ing the premise that the adoption of the ordinance was a practical construction of the quoted charter provision, it by no means follows that judicial inquiry into the correctness of the council's construction is precluded.

"* * * In any event, to apply the doctrine of contemporaneous or practical construction to a statute, the statute so construed must be doubtful, ambiguous, or uncertain, and the ambiguity which arises from the language must be so great as to compel the court to seize upon extraneous circumstances to aid in reaching a conclusion. Where the meaning of a statute is plain, a contemporaneous or practical construction thereof will not be permitted to control, modify, destroy, abrogate, contradict, enlarge, or restrict that meaning." 50 Am. Jur., Statutes, § 319.

The meaning of the word "misconduct" being clear and well understood, the doctrine of practical construction must necessarily be disregarded.

If in determining the self-executing properties of a charter provision "it is not important that other legislation may be contemplated to supplement it" (see, State ex rel. Furlong v. McColl, 127 Minn. 158, 149 N. W. 12, *supra*), then supplemental legislation such as section 14 of ordinance No. 7537 cannot be held to limit the self-executing provisions of the charter. The obvious purpose and the only effect of the enactment of that section was to remove violations of the character therein specified from debatable ground and definitely to place them within the ambit of "misconduct" justifying the revocation of liquor licenses.

Were the ordinance the sole source of the council's power to revoke plaintiff's license, such power would, under the maxim *expressio unius est exclusio alterius,* be limited to the causes stated in section 14 of ordinance No. 7537, *i. e.,* "violation of any provision of this ordinance or of the Liquor Control Act of the State of Minnesota." 33 Am. Jur., Licenses, § 66; 37 C. J., Licenses, § 111; In Matter of Lyman, 160 N. Y. 96, 54 N. E. 577; Peterson v. Town of Guernsey, 26 Wyo. 272, 183 P. 645. Whether a violation of a

regulation promulgated by a federal agency under authority of federal statute fixing heavy penalties for violations is at the same time a violation of the state liquor control act is academic, for here the ordinance is not the sole source of the power to revoke. The city council could not by the enactment of an ordinance destroy or dilute the standards of "misconduct" justifying a revocation of a liquor license. Such licenses are granted under the police power of the city (Claussen v. City of Luverne, 103 Minn. 491, 115 N. W. 643, 15 L.R.A.[N.S.] 698, 14 Ann. Cas. 673), a power which cannot be legislated or bartered away. City of St. Paul v. C. St. P. M. & O. Ry. Co. 139 Minn. 322, 166 N. W. 335, and cases cited; City of Superior v. Roemer, 154 Wis. 345, 141 N. W. 250.

■ The claim that a violation of OPA regulations cannot be considered misconduct because such regulations are of recent origin and could not have been within the contemplation of the framers of the city charter in fixing "misconduct" as the standard to guide the council in revoking licenses, is also untenable. The charter commission was confronted with the practical difficulty of anticipating and precisely defining, in advance, "the varying circumstances and conditions to be taken into account" and uniform and unvarying standards of misconduct previously prescribed were "liable to prove inadequate or inapplicable." See, State v. Taubert, 126 Minn. 371, 372, 148 N. W. 281, 282; Lerner v. City of Delavan, 203 Wis. 32, 233 N. W. 608. The charter framers certainly contemplated changes in the penal laws of the state and nation; and, under its most restricted definition, the term "misconduct" must be held to include a positive violation of law of whatever vintage.

Next, plaintiff argues that violations of OPA regulations are of such common occurrence and of such inconsequential nature as not to constitute "misconduct" warranting the revocation of a license issued by an agency of a state or one of its municipalities. It may be conceded that minor infractions of OPA regulations unrelated to a licensee's business would not constitute "misconduct" authorizing the revocation of his license; but we are dealing here with a serious violation and one which related to the operation of the very

business in which plaintiff was licensed. No one can successfully argue that the OPA regulations as a whole are not an important and necessary part of our war economy. The courts will afford a licensee ample protection gaainst any arbitrary or any capricious action of a city council in attempting to revoke a license for a minor infraction of the federal rules and regulations entirely disconnected with the licensed business; but where there is a major infraction definitely connected with such business, no one can successfully claim any abuse of discretion on the part of a city council in declaring that such violation is "misconduct" justifying the revocation of a license.

Nor can it be claimed that the action of the city council in plaintiff's instance was discriminatory because of previous inaction on the part of the council in failing and neglecting to revoke other licenses for similar violations. It would be a novel rule indeed which justified misconduct on the part of an offender against state laws or city ordinances on the ground that such statute or ordinance had fallen into what Grover Cleveland would call "innocuous desuetude." Cleveland also said, "Public officers are the servants and agents of the people, to execute laws which the people have made." There can be no vested right in disrespect for the law. If the holder of a liquor license chooses to violate the law because others do, he does so at his own risk. Official laxity in failing to revoke the licenses of other wrongdoers can furnish no legal basis for an estoppel against the city when officials do become diligent.

What we have said fully disposes of plaintiff's claim that his off sale liquor license was improperly revoked. Our attention has not been called to any ordinance relating to the revocation of confectionery licenses and off sale malt beverage licenses. We were told by counsel for plaintiff that the three licenses held by his client are so interrelated as to make the confectionery and malt beverage licenses of no importance to him without the off sale liquor license. For these reasons, we have not especially considered the right to revoke the other two licenses for violation of OPA regulations unrelated to the confectionery or malt beverage business.

Should plaintiff desire to be heard upon that question, opportunity will be afforded him.

Affirmed.