Syllabus by the Court
Employee termination does not legally justify the extraordinary relief of a temporary injunction where the harm suffered is of the type common to all discharged employees.
This is an appeal from an order of the Ramsey County District Court granting a temporary injunction restraining appellants, Ramsey County Attorney Tom Foley and the Ramsey County Board of Commissioners, from terminating respondents' employment by Ramsey County pending a determination of the action on the merits. By order dated February 10, 1982, this court reversed the granting of the temporary injunction, noting that this opinion setting out the reasoning underlying the court's action would follow. 315 N.W.2d 593.
Respondents, Susan D. Miller, Neleta Kay Dunkelberger, and Grace M. Adams, are long-time civil service employees in the Legal Resources Services (LRS) Division of the Ramsey County Attorney's Office. All hold supervisory positions in LRS, which is the division primarily responsible for the collection of child support.
As a result of a severe financial crisis facing Ramsey County, the Ramsey County Board of Commissioners (Board) enacted countywide budget cuts in the fall of 1981. Respondents are three of 178 Ramsey County employees who lost their jobs in these cuts.
Respondents brought this action seeking temporary and permanent injunctions restraining appellants from terminating respondents' employment and seeking compensatory and punitive damages. Respondents contend that the action of appellants in eliminating funding for respondents' positions was arbitrary and capricious and not in the public interest, and that the action was a deprivation of respondents' civil rights since it was a retaliation by appellants against respondents for "exercising their constitutionally guaranteed right of freedom of speech and expression." Respondents support their claims with their own affidavits stating that Foley, the county attorney, dislikes them and is using the budgetary problems as an excuse to terminate their employment. They believe it is not logical to make budget cuts in a revenue collection department, and that since *Page 712 
there were no budgetary reasons for the elimination of their positions, there must be other impermissible reasons. Respondents would have preferred an alternative budget considered by the Board that eliminated additional non-supervisory positions instead of their own.
The sole issue on appeal is whether the granting of the temporary injunction by the trial court constitutes a clear abuse of discretion. See Eakman v. Brutger, 285 N.W.2d 95
(Minn. 1979).
A temporary injunction is an extraordinary equitable remedy. Its purpose is to preserve the status quo until adjudication of the case on its merits. Pickerign v. Pasco Marketing, Inc.,303 Minn. 442, 444, 228 N.W.2d 562, 564 (1975). Not every change in circumstances merits such relief, however. Because a temporary injunction is granted prior to a complete trial on the merits, it should be granted only when it is clear that the rights of a party will be irreparably injured before a trial on the merits is held. Id. at 444, 228 N.W.2d at 564; North Central PublicService Co. v. Village of Circle Pines, 302 Minn. 53, 60,224 N.W.2d 741, 746 (1974); Thompson v. Barnes, 294 Minn. 528, 533,200 N.W.2d 921, 924 (1972).
In Dahlberg Brothers, Inc. v. Ford Motor Co., 272 Minn. 264,137 N.W.2d 314 (1965), this court specified five factors to be considered in making that determination:
 (1) The nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief.
 (2) The harm to be suffered by plaintiff if the temporary restraint is denied as compared to that inflicted on defendant if the injunction issues pending trial.
 (3) The likelihood that one party or the other will prevail on the merits when the fact situation is viewed in light of established precedents fixing the limits of equitable relief.
 (4) The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the statutes, State and Federal.
 (5) The administrative burdens involved in judicial supervision and enforcement of the temporary decree.
Id. at 274-75, 137 N.W.2d at 321-22 (footnotes omitted).
The relationship between the parties here is personal employment. Respondents Miller, Dunkelberger, and Adams have been employed by Ramsey County since 1969, 1966, and 1966 respectively. While they are long-term employees, this factor is not determinative since the equity policy against enforcing personal service contracts requires an extraordinarily strong showing of harm to justify a temporary injunction, Sampson v.Murray, 415 U.S. 61, 83-84, 94 S.Ct. 937, 949-950,39 L.Ed.2d 166 (1974). See Boise Cascade International, Inc. v. NorthernMinnesota Pulpwood Producers Association, 294 F. Supp. 1015,1020-21 (D.Minn. 1968) (the court cannot compel specific performance of personal service contracts); cf. Minn.Stat. §§ 185.02, 185.03 (1980) (injunctions shall not be used in any case between employer and employee in labor disputes).
The district court made the specific finding that respondents would suffer irreparable harm if the temporary injunction were denied. Respondents will certainly suffer loss of income which is approximately half of the family income in each case. Employee benefits of life and medical insurance will also be lost. Respondents' affidavits also state that they will be unable to find comparable employment and that the loss of their incomes will mean their families will be unable to meet their monthly expenses. In addition, respondents claim the elimination of their positions will cause irreparable injury to their professional reputations.
In evaluating the harm alleged in an employee termination situation, we are guided by the discussion of irreparable harm in Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166
(1974). Considering all the facts alleged in the pleadings and affidavits in the light most favorable to respondents, we conclude that respondents have *Page 713 
failed to carry their burden of showing that the harm justifies temporary relief.
In Sampson, the United States Supreme Court reversed the granting of a temporary injunction in an employment situation, holding that loss of income and damage to reputation were insufficient to constitute irreparable injury and failed to provide a basis for temporary injunctive relief. Id. at 91-92,94 S.Ct. at 953. The Court stated that "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury," id. at 90, 94 S.Ct. at 952 (footnote omitted), and quoted from Virginia Petroleum JobbersAssociation v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958):
 "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."
415 U.S. at 90, 94 S.Ct. at 952 (emphasis in original).
The Court in a footnote, however, recognized that extraordinary cases may arise that so far depart from the normal situation that injunctive relief is appropriate:
 Such extraordinary cases are hard to define in advance of their occurrence. We have held that an insufficiency of savings or difficulties in immediately obtaining other employment — external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself — will not support a finding of irreparable injury, however severely they may affect a particular individual. But we do not wish to be understood as foreclosing relief in the genuinely extraordinary situation.
Id. at 92 n. 68, 94 S.Ct. at 953 n. 68.
As personally tragic as they are, the financial and emotional injuries suffered by respondents in this case are of precisely the type common to most discharged employees, and therefore fail legally to bring the situation within the exception of extraordinary circumstances. Reinstatement and back pay would be available if respondents were to prevail on the merits. Losing one's job due to budget cuts in a period of recognized financial crisis carries with it no stigma that is likely to harm one's professional reputation. Respondents are not accused of any misbehavior and their occupation is not peculiarly susceptible to stigmatization. Cf. Gonzalez v. Chasen,506 F. Supp. 990 (D.P.R. 1980) (law-enforcement officer stigmatized by dismissal for alleged misconduct).
Although we do not decide the merits of the case on an appeal from the granting of a temporary injunction, the likelihood of success is one of the Dahlberg criteria. The trial court made the following finding of fact:
 The Court has some misgivings as to whether or not the plaintiffs are likely to prevail on the merits in their action. In the event it is established that the defendants acted properly in making required budget reductions it is somewhat doubtful that the plaintiffs can prevail in this lawsuit. However, there may be a chance that the plaintiffs are able to establish a cause of action even though the Court at this time feels that it will be most difficult. Therefore, the Court will allow for a temporary injunction even though the chances of the plaintiffs prevailing are somewhat diminished, however each plaintiff shall post a bond in the sum of $5,000.
After reviewing the entire record, we agree with the trial court that respondents are unlikely to prevail on the merits. The evidence suggests that the actions of defendants were entirely proper. The chain of command was followed, alternatives were considered, and decisions were made to reduce the budget. The director of the LRS division stated in his affidavit and in his deposition that he believed cutting the supervisory staff rather than non-supervisory staff would be less harmful to LRS. He also informed the Board that he felt *Page 714 
LRS could maintain its present revenue collection level with the reductions in staff. There is no evidence that the county attorney initiated the cuts, let alone initiated them specifically to remove respondents. Respondents' assertions that their positions were eliminated in retaliation for their political expressions are unsupported by any evidence other than their own subjective beliefs.
When considering decisions of a governmental unit involving judgment and discretion, the court will not substitute its judgment for that of the governmental unit. City of NewBrighton v. Metropolitan Council, 306 Minn. 425, 237 N.W.2d 620
(1975). If the reasonableness of the action of the governmental unit is "at least doubtful, or fairly debatable," the court will uphold the action. Arcadia Development Corp. v. City ofBloomington, 267 Minn. 221, 125 N.W.2d 846 (1964).
Since the likelihood of success on the merits is slight, the public interest is an additional reason for reversing the granting of the temporary injunction. The type of irreparable harm claimed by respondents is similar to the type of harm all public employees suffer as a result of termination. Respondents are three of 178 Ramsey County employees laid off in this round of budget cuts. It is indeed unfortunate that respondents have lost their jobs, but many others are similarly situated and the economic conditions may require additional massive layoffs in the future. The disruptive effect of allowing public employees to obtain injunctions pending trials on the merits in budgetary layoff situations could hinder governmental bodies in making important and difficult budgetary decisions.
Applying the Sampson standard of irreparable harm to our criteria for the issuance of a temporary injunction underDahlberg, we conclude that respondents have failed to show themselves entitled to this extraordinary relief. Therefore, we reverse the granting of the temporary injunction by the district court.
Reversed by order of this court of February 10, 1982.