Russell A. MILLER, Appellant,

v.

CITY OF SAINT PAUL, et al., Respondents.

No. C5–84–1444.

Court of Appeals of Minnesota.

March 5, 1985.

Review Denied April 26, 1985.

Deborah K. Ellis, Douglas W. Thomson, St. Paul, for appellant.

Philip B. Byrne, Asst. City Atty., St. Paul, for respondents.

Heard, considered, and decided by the court en banc, consisting of POPOVICH, C.J., and WOZNIAK, LANSING, HUSPENI, FORSBERG, LESLIE and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

Russell A. Miller appeals from an order vacating a temporary restraining order and denying his motion for a temporary injunction. He sought to enjoin the City of Saint Paul from closing Miller's Bar pending determination of an action seeking injunctive

relief, a declaratory judgment, and damages. Miller contends that he will suffer irreparable harm if he is not allowed to stay in business, and that he has shown a likelihood of success on the merits.

The City of Saint Paul and the City Council seek review of the trial court's assertion of jurisdiction contending that the exclusive method of judicial review of a decision made by the Saint Paul City Council is by writ of certiorari to this court. We affirm.

## FACTS

Russell Miller purchased Miller's Bar from his sister eleven years ago after an injury prevented him from continuing his employment as a baker. The bar is located at Ninth and St. Peter Streets in Saint Paul. In 1973, the City of Saint Paul issued an on-sale and off-sale nonintoxicating liquor (3.2 beer) license and a restaurant license to Miller for the premises. Miller has continuously operated Miller's Bar since 1973. The bar provides his sole source of income. Neither Miller nor any of his employees has ever been charged with or convicted of any violation of a city ordinance or state law incident to the operation of the bar.

On March 14, 1984, the license inspector for the City of Saint Paul notified Miller, by letter, of a public hearing before the Saint Paul City Council regarding his licenses. The inspector stated he would recommend to the city council that the licenses be revoked because (1) the bar is operated in a manner which creates a serious danger to the public health, safety or welfare, and creates a nuisance; (2) sales have been made to minors and/or they have been permitted to consume on the premises; (3) police investigations have been obstructed and there has been a failure to cooperate with or provide information to police about unlawful activities in the bar; and (4) marijuana has been allowed to be sold in the bar. In the letter, the license inspector stated that evidence would be introduced relative to some or all of a list of specific instances.

Hearings were held on April 11 and 26, 1984. Four police officers testified on behalf of the city. Two police reports prepared by Sergeant Tredal were admitted into evidence. Tredal was cross-examined about both. From February 1983 to January 1984, he visited the bar approximately ten times. During nine of the visits, he observed what appeared to be drug deals. On one of those occasions, he observed that a suspect sold what appeared to be marijuana cigarettes from a metal box. The suspect replenished the box with marijuana cigarettes from a briefcase which the bartender stored behind the bar. During three visits, Tredal purchased marijuana from persons inside the bar. Subsequent to one purchase, Tredal had three people arrested. One pled guilty, another was convicted, and the third was released. In Tredal's opinion, it would have been impossible for the bartenders not to know that drug sales were taking place inside the bar.

According to a police report which was admitted, another police officer observed sales of marijuana in the bar and arrested two people. Marijuana was recovered from each.

A police officer who had responded to "numerous" (probably 50) calls at Miller's Bar for fights, robberies, and assaults testified that while attempting to get information, he was given little or no cooperation from bartenders and was hindered by their actions. The officer was told by several patrons who had offered information that they were thrown out of the bar for being troublemakers.

Two undercover officers spent about 45 minutes in the bar on March 3, 1984. One of the officers testified that she saw approximately six people who appeared to be juveniles. One of these was known to her and was drinking out of what appeared to be a beer bottle.

When the undercover officers tried to leave the bar on March 3, 1984, they were assaulted by several people. One of the assailants was one of the juveniles the officer had observed drinking. The juvenile was immediately arrested. She appeared

to be quite intoxicated. It was confirmed that she was underage.

A police lieutenant testified that he talked to Miller approximately a year and a half earlier and told him there were an inordinate number of police calls to the bar—more than to any other bar in the city. The lieutenant told Miller that unless he did something about controlling his clientele, the matter would be taken to the license inspector for license suspension or revocation. On March 4, 1984, the lieutenant told Miller that the number of incidents had risen and that it appeared that Miller had lost control. He further told Miller that the G & M Bar, which was across the street and catered to the same clientele, had one police call for each fifteen calls for Miller's.

According to another police report which was admitted, police were called to the bar on March 5, 1984, because of a stabbing.

Miller testified that shortly after his second conversation with the lieutenant, he filed a complaint with the internal affairs division of the police department. He further testified that he never knowingly allowed any illegal activity at the bar; anything his bartenders knew, he knew; and any time anything out of the ordinary happened, he got a call.

The Saint Paul City Council voted unanimously on May 3, 1984, to accept the license inspector's recommendation that Miller's licenses be revoked. Shortly thereafter, Miller filed suit against the city, its council, and the individual council members. In his complaint, Miller requested a declaratory judgment that the defendants' alleged actions violated due process guarantees of the Minnesota and United States Constitutions, and petitioned the trial court to permanently restrain the City and City Council of St. Paul from envoking or enforcing the revocation of the licenses at issue. Miller's complaint also alleged a cause of action pursuant to Title 42 U.S.C. § 1983, seeking recovery of compensatory and punitive damages.

Miller was granted a temporary restraining order on May 11, 1984, which precluded the closing of Miller's Bar pending a hearing on Miller's motion for a temporary injunction and the City of Saint Paul's motion for dismissal of the complaint. After the hearing, the trial court issued an order vacating the temporary restraining order, and denying Miller's motion for a temporary injunction and the city's motion for dismissal.

## ISSUES

1. Is a writ of certiorari the exclusive means for obtaining judicial review of a municipal body's revocation of a nonintoxicating liquor license?

2. Did the trial court clearly abuse its discretion in denying a temporary injunction?

## ANALYSIS

1. The city moved to dismiss Miller's complaint, contending that the exclusive method of judicial review of a quasi-judicial decision made by a municipal governing body is by writ of certiorari to this court. The trial court agreed that by an action for a permanent injunction, Miller is seeking judicial review of the council's action. However, the court denied the motion for dismissal of the complaint, reasoning that the supreme court has not limited judicial review to writs of certiorari and that temporary restraining orders and injunctive relief should be available during the pendency of a review proceeding in the appropriate case. The city now seeks review of the court's denial of the motion to dismiss.

Denials of motions to dismiss are generally not appealable. *Kokesh v. City of Hopkins*, 307 Minn. 159, 238 N.W.2d 882 (1976). However, there are exceptions to this rule. An order granting or denying a pretrial motion to dismiss for lack of jurisdiction is appealable as of right. *Hunt v. Nevada State Bank*, 285 Minn. 77, 172 N.W.2d 292 (1969). Since the city is contending that the trial court did not have jurisdiction, we will review the trial court's decision.

There are three types of remedies which can be used to obtain judicial review of administrative action: the extraordinary remedies, the equitable remedies, and special statutory proceedings. D. Baird, *Remedies By Judicial Review of Agency Action in Minnesota*, 4 Wm. Mitchell L.Rev. 277, 286–287 (1978). Some of the specific remedies and proceedings may be used in conjunction with one another or alternatively. *Id.* The availability and application of a remedy must be considered in relation to the particular administrative action sought to be reviewed.

In this case, Miller clearly had a right to seek review of the city council's revocation of his licenses by writ of certiorari. *See State ex rel. Peterson v. City of Alexandria*, 210 Minn. 260, 297 N.W. 723 (1941). However, certiorari is not an exclusive remedy when the matter sought to be reviewed is the revocation of a license by a municipality. *National Cab Co. v. Kunze*, 182 Minn. 152, 154–155, 233 N.W. 838, 839 (1930). An injunction may be appropriate. *Id.*

In *Moskovitz v. City of St. Paul*, 218 Minn. 543, 16 N.W.2d 745 (1944), the supreme court considered an appeal which came to the court in a posture identical to the one in this case. The Saint Paul City Council revoked Moskovitz's off-sale liquor, off-sale malt beverage, and confectionery licenses. By suit, Moskovitz sought to restrain the city and its officers from revoking the licenses. His motion for a temporary injunction was denied and he appealed to the supreme court. The court did not comment on the procedural posture of the suit. We can only conclude that the court deemed the posture appropriate. *Moskovitz* has lost no force by passage of time.

Recently the supreme court considered another case in which appellant sought a permanent injunction against the Saint Paul City Council to enjoin revocation of various liquor and entertainment licenses. *Hymanson v. City of St. Paul*, 329 N.W.2d 324 (Minn.1983).

The City of Saint Paul argues that the recent statutory and rule changes which give this court jurisdiction to review decisions by certiorari preclude Miller from seeking an injunction in district court. The city reads too much into the recent statutory and rule changes. Nowhere do the statutes overturn the case law which indicates that review of a revocation of a liquor license by a municipality may be by an action for an injunction as well as by writ of certiorari. We affirm the trial court's denial of respondent's motion to dismiss.

2. Miller appeals from the decision of the trial court denying his request for a temporary injunction. The trial court considered the factors set forth in *Dahlberg Brothers, Inc. v. Ford Motor Co.*, 272 Minn. 264, 137 N.W.2d 314 (1965), which are to be used in determining whether a temporary injunction should issue. It concluded that Miller's action at law pursuant to Title 42 U.S.C. § 1983 provided an adequate remedy for Miller's claim that the license revocation would deprive him of his livelihood without due process of law. The court also concluded that the closing of Miller's Bar during the pendency of this action would not result in a permanent loss of bar patrons.

The trial court further concluded that the notice of March 14, 1984, was sufficiently complete, that the subsequent findings of the city council are adequately supported by competent evidence in the record made before the council, and that the findings are based upon evidence relevant to the grounds upon which Miller was notified. Thus, the trial court determined that Miller did not sustain his burden of showing a likelihood of success on the merits.

This court recently addressed the question of the proper scope of review in injunction matters.

> The granting of an injunction rests within the sound discretion of the trial court and " 'the sole question presented on appeal is whether there was clear abuse thereof by disregard of facts or applicable principles of equity.' " *Edin v. Jostens, Inc.*, 343 N.W.2d 691, 693 (Minn.Ct.

App.1984). * * * The party seeking the injunction must establish that his legal remedy is inadequate, * * * and that the injunction is necessary to prevent great and irreparable harm.

*Yager v. Thompson,* 352 N.W.2d 71, 74 (Minn.Ct.App.1984) (emphasis and citations omitted).

■ Further, in considering whether the trial court abused its discretion, we are mindful that it also was obligated to use a narrow scope of review when evaluating the council's determination.

In reviewing the proceedings of the municipality it is not the court's function to pass on the wisdom of the revocation, but only to determine whether the council exercised an honest and reasonable discretion, or whether it acted capriciously, arbitrarily, or oppressively.

*Sabes v. City of Minneapolis,* 265 Minn. 166, 171, 120 N.W.2d 871, 875 (1963).

Two of the five *Dahlberg* factors as considered by the trial court are relevant to this inquiry: relative hardship and merits prognosis.

## A. RELATIVE HARDSHIP

■ Miller argues that he will suffer irreparable harm if he is not allowed to stay in business pending a final determination on the merits. He contends that he will lose the goodwill and clientele which have been cultivated by the owners of Miller's Bar over the past forty years. Miller also argues that his sole livelihood is obtained from Miller's Bar and that substitute employment while his action is pending is limited by a back injury.

Upon the trial court's denial of Miller's motion for a temporary injunction, Miller's Bar will close, and Miller will lose the source of his livelihood. The trial court did not consider this to be determinative, however, in its conclusions regarding relative hardship.

The court also considered and concluded that Miller had an adequate remedy at law for the alleged wrongful revocation as charged in Miller's pending claims pursu-

ant to 42 U.S.C. § 1983. In so doing, the trial court relied in part on *Miller v. Foley,* 317 N.W.2d 710 (Minn.1982).

Miller provides that:

Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Miller,* 317 N.W.2d at 713 (quoting *Virginia Petroleum Jobbers Association v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958)).

We recognize that this fact situation is more compelling than that presented in *Miller,* for here we are dealing with an ongoing business. The trial court concluded, however, that "[b]ecause of the location of the bar and the kind and nature of its customers, it cannot be assumed that such permanent loss will occur." Furthermore, the trial court stated that there was adequate evidence in the record of the proceedings before the council to support the council's determination that Miller's Bar had been " * * * operated in such a manner as to create a serious danger to the public health, safety and welfare and so as to create a nuisance."

Balancing all these considerations, the trial court was not persuaded by Miller's arguments as to relative hardship. Given the limited scope of review on appeal, we are unable to conclude that the trial court, in making these determinations and in relying, in part, on *Miller,* acted in such a manner as to clearly abuse its discretion.

## B. LIKELIHOOD OF SUCCESS ON THE MERITS

Even assuming, arguendo, that the closing of Miller's Bar constitutes an irreparable injury to Miller, this does not mandate the granting of a temporary injunction. Common sense and case law support that a petitioner must also make a reasonably sufficient showing on the merits of his underlying claim. *Blue River Company v.*

*Summit Country Development Corporation*, 207 F.Supp. 283 (D.Colo.1962).

■ After reviewing the record, we conclude that the trial court was not clearly erroneous in determining that Miller did not sustain his burden of showing a likelihood of prevailing on the merits of his claims. In his complaint, Miller alleges the March 14, 1984, notice is inadequate under the due process clause of the Minnesota and Federal constitutions.

Minn.Stat. § 340.01 (1984) confers authority to issue licenses for the sale of nonintoxicating malt liquors, and punish violations of regulations, on municipalities. The Saint Paul Legislative Code classifies both intoxicating and nonintoxicating liquor licenses as Class III, along with many other types of licenses. Saint Paul Legislative Code § 310.01(9). The restrictions and other substantive regulations regarding these licenses vary, but all Class III licenses follow the same procedures for application, renewal, or revocation by the city council. *Id.* Licensees are entitled to notice and opportunity to be heard at any revocation hearing. Saint Paul Legislative Code § 310.05(1). Notice shall be written, served a reasonable time before the hearing, state the place, date, and time of the hearing, and state the issues or grounds on which the proposed revocation is based. Saint Paul Legislative Code § 310.05(2).

■ The code recognizes that any additional notice or hearing procedures required by statute are applicable, including Minn.Stat. § 340.135. Saint Paul Legislative Code § 310.05(7). Section 340.135 requires adherence to the Administrative Procedures Act, Minnesota Statutes Chapter 14, by authorities issuing a license pursuant to the intoxicating liquor act. The statutes regarding nonintoxicating liquor licenses do not contain a similar provision.[1] At trial on the merits, determination must be made whether notice provided in the Saint Paul Legislative Code satisfies due process requirements, and if those requirements were met in Miller's case.

■ The notice in this case informed Miller that a public hearing would be held before the city council regarding his licenses. The notice stated that the city license and permit division would recommend that his licenses be revoked. It gave four bases for the recommendation and listed specific instances which might be considered. At trial on the merits, the trier of fact might reasonably find that this notice complied with the code and was reasonable.

Miller also alleges that the council did not hold itself to the evidentiary standards set forth in the notice. Miller specifically complains about hearsay evidence, yet the notice specifically states that hearsay evidence would be allowed. He also complained about the conclusions contained in a police report. The author in this case was available for and was cross-examined. Miller further alleges the city conspired to revoke the licenses in a manner which impeded his ability to mount a defense. At trial on the merits, the trier of fact might reasonably find no evidence of such conspiracy.

■ Finally, Miller alleges that the action of the council is arbitrary and unreasonable. The council was presented with evidence of underage drinking, unlawful sales of marijuana in the bar, lack of cooperation of bar management, and an assault and a stabbing in the bar. Municipal authorities have broad discretion to determine revocations of liquor licenses. *Hymanson v. City of Saint Paul*, 329 N.W.2d 324, 326 (Minn.1983). Again, at trial on the merits, the finder of fact might reasonably find no arbitrary or unreasonable action by the St. Paul City Council.

## DECISION

Appellant properly sought injunctive relief in district court from action of the Saint Paul City Council revoking appellant's nonintoxicating liquor license. The

---

1. The dissent would require the appointment of an independent hearing examiner pursuant to Section 340.135. Such appointment is explicitly *not* required. *Hymanson.*

trial court did not clearly abuse its discretion in denying appellant's request for a temporary injunction. Because of the nature of this action, we direct the trial court to accelerate trial on the merits.

Affirmed.

POPOVICH, C.J., and LESLIE and RANDALL, JJ., concur.

POPOVICH, Chief Judge, dissenting.

The trial court should have issued a preliminary injunction because the requirements for a preliminary injunction did exist. I therefore respectfully dissent for the following reasons:

### 1. Independent Hearing Examiner.

The City should have appointed an independent hearing examiner to hear this matter. The Minnesota Supreme Court and this court noted in other circumstances reluctance to uphold the actions of governmental bodies exercising "the three-part role of prosecutor, judge and jury." *Ganyo v. Independent School District No. 832*, 311 N.W.2d 497, 499 n. 2 (Minn.1981); *see Schmidt v. Independent School District No. 1*, 349 N.W.2d 563, 567 (Minn.Ct. App.1984).

Appellant's family has operated Miller's Bar for forty years. The revocation of appellant's *nonintoxicating* liquor license will destroy the business and accompanying good will and deprive appellant of his sole means of support. This is a significant deprivation requiring the appointment of an independent hearing examiner. Failure to appoint an independent hearing examiner in this matter was a violation of due process. *See Hymanson v. City of St. Paul*, 329 N.W.2d 324, 329 (Minn.1983) (Scott, J., dissenting).[1]

### 2. Irreparable Harm.

The majority's reliance upon *Miller v. Foley*, 317 N.W.2d 710 (Minn.1982), is mis-

placed. *Miller* did not hold the destruction of a business enterprise and loss of accompanying good will is not irreparable harm. *Miller* held the *loss of employment* is not an irreparable injury. *See* 317 N.W.2d at 712–13. The cases cited in *Miller*, which are relied upon in the majority opinion, also dealt with employment situations. *See id.* at 712. The rationale underlying these cases was "the equity policy against enforcing personal service contracts." *Id.* These cases and their rationale are completely inappropriate as applied to this matter.

The destruction of a business enterprise is irreparable harm. *E.g., Dahlberg Brothers, Inc. v. Ford Motor Company*, 272 Minn. 264, 137 N.W.2d 314 (1965). Courts have issued preliminary injunctions to protect businesses from adverse governmental actions. *See, e.g., Geiger v. City of Eagan*, 618 F.2d 26 (8th Cir.1980).

### 3. Likelihood of Success on the Merits.

I also disagree with the majority's conclusion regarding appellant's likelihood of success on the merits. The record indicates that much of the evidence presented to the City Council was prepared specifically for that hearing, although the complained of incidents purportedly happened as long ago as 1982. The record indicates appellant was not informed of police complaints and copies of police reports were never given him.

Most of the evidence presented to the Council appears to have been vague recollections made by officers who did not make contemporaneous records, but who had prepared reports only in anticipation of the license revocation hearing. Given the business existence in the community of over forty years and the paucity of the City's evidence justifying revocation, I believe appellant presented a sufficient showing of a likelihood of success on the merits.

---

1. Although procedures governing nonintoxicating liquor licenses are distinguished from intoxicating liquor licenses, the principle of equal protection under the law requires both types of licenses to be treated similarly. The interests at stake in the revocation of a nonintoxicating liquor license are no less than an intoxicating license as this matter demonstrates. *See generally Glassman v. Miller*, 356 N.W.2d 655, 656 (Minn.1984).

4. The burden to the public welfare from the issuance of a temporary injunction is far outweighed by the harm appellant will suffer. *See Dahlberg*, 272 Minn. at 276–77, 137 N.W.2d at 322–23. I would remand this matter to the trial court with instructions to issue a temporary injunction pending resolution of the merits of the main action.

RANDALL and LESLIE, JJ., concur in the dissent of POPOVICH, C.J.